HEARD NOVEMBER TERM, 1877.

CASE No. 645.

BLAKELY & COPELAND v. WILLIAM H. FRAZIER AND WILLIAM A. SANDERS, AS EXECUTORS OF MARSHALL FRAZIER, DECEASED.

1. An action was instituted in 1871 in the county where plaintiffs lived; after the amendment to the code, adopted November, 1873, and after answers put in, an application was made by defendants to have place of trial changed to the county wherein they resided, and was refused, and defendants at the trial again objected to the venue and the objection was overruled. *Held,* that such rulings were denials of substantial rights material to the defence, secured by statute, and were erroneous.

2. From such denials an appeal will lie to this court.

3. Meaning of the phrases, *involving the merits* and *affecting the judgment* as used in Section 11 of the code and its amendments, *discussed.*

4. Irregularities in complying with an order of the Circuit Court allowing amendments to the pleadings, cannot be taken advantage of at the trial of the cause, nor be the subject of an appeal to this court.

5. Where a factor pays the amount of a reclamation made upon him for a balance due on the sales of cotton shipped through him, on account of overdrafts by the owner of the cotton, the statute of limitations com-

mences to run in favor of such owner, from the day of payment by the factor, and not from the sale of the cotton.

6. A factor who voluntarily pays the amount of a reclamation demanded of him by cotton-sellers in Liverpool, for balance due on account-sales for overdrafts, and sues to recover it from the owner of the cotton, assumes the burden of proving the accounts correct; the account-sales and the payment are not sufficient evidence of his right to recover.

7. It is not error to refuse to charge as to the sufficiency of evidence apart from its legal character and tendency.

8. An award which merely decides by which one of two persons an account is to be primarily paid, does not bind a party to the arbitration to the correctness of the items composing the account.

9. In an action brought by a factor against the executors of the owner of certain cotton, to recover the amount of a reclamation paid on account of such cotton, a witness, through whom the factor shipped such cotton and paid the amount of such reclamation, may testify to conversations had between himself and such owner, now deceased.

10. But in such case the factor cannot testify to conversations had between himself and such deceased person.

11. In an action against the executors of A., the unpaid costs of a suit on the same cause of action against A., brought and discontinued during his lifetime, cannot be interposed as a defence.

Before COOKE, J., Richland, May, 1876.

This was an action brought by the plaintiffs against the executors of Marshall Frazier, deceased, to recover a certain amount of money paid by plaintiffs under the following circumstances:

In March, 1866, the house of Marshall, Beach & Co., of Charleston, received through Blakely & Copeland, of Columbia, two hundred and eleven bales of cotton, which belonged to Marshall Frazier, of Edgefield, Frazier, in person, delivering to Marshall, Beach & Co. the letter of advice written by Blakely & Copeland, which accompanied the shipment of the cotton. The cotton was sent by Marshall, Beach & Co., to Beach, Root & Co., of Liverpool, and Frazier was given a letter of credit to Salomon, Root & Co., of New York, by which he drew from the New York house $20,000 as an advance upon this shipment. The Charleston, New York and Liverpool houses were composed of the same individuals as partners, and were identical in interest. A check on a New York bank, payable to Frazier and endorsed by him, was produced in court by E. W. Marshall,

head of the Charleston house, having been accounted for by the Charleston firm in its settlements with the New York house, and received by Marshall, Beach & Co. from Salomon, Root & Co. in due course of business; and Frazier subsequently acknowledged to E. W. Marshall that he had received the money. According to the testimony of E. W. Marshall, it is the custom of merchants through whom produce is shipped, that advances go forward with the shipment as a charge thereon, and are paid from the sales of the produce. As soon as Salomon, Root & Co. advanced the $20,000 to Frazier, they wrote to Beach, Root & Co. informing them of the advance and sent the account forward, reducing it to pounds, shillings and pence, at the prices that day prevailing in New York for sterling exchange on Liverpool. According to account-sales rendered by Beach, Root & Co. it appeared that this draft was paid May 1st, 1866, it being £4186 5s. 6d.

In May and June, 1866, this cotton was sold in Liverpool and fell short of paying charges and advances by £778 11s. 4d. This amount was paid by Marshall, Beach & Co., and its repayment demanded by them of Blakely & Copeland; afterwards at B. & C.'s request, demand was made upon Marshall Frazier for this amount. Frazier thought Blakely & Copeland were primarily liable. The question, who was primarily liable to Marshall, Beach & Co.—Blakely & Copeland or Frazier—was submitted to Gov. F. W. Pickens, selected by Frazier, and Wm. M. Martin, selected by Marshall, Beach & Co., who awarded as follows:

" We, the undersigned, agree and decide that the said Blakely & Copeland were factors of the said cotton, and in the first instance directly responsible for all said reclamation." Signed by the arbitrators and dated November 19th, 1866.

On December 10th, following, Blakely & Copeland paid to Marshall, Beach & Co. £778 11s. 4d. " at the current rate of exchange this day, say $6.70 per pound sterling, making the sum of $5216.40 United States currency," balance due on account of the shipment of cotton made by M. Frazier.

To recover this amount, Blakely & Copeland brought their action against Marshall Frazier, in Edgefield district, February 16th, 1867, and the same on motion of plaintiffs' attorneys was

ordered by Judge Melton to be discontinued and plaintiffs pay the costs, July 18th, 1870. In August of the same year, Marshall Frazier died. Another suit on same cause of action by same plaintiffs against W. H. Frazier, executor of M. Frazier, was instituted in Richland county, in August, 1871. W. H. Frazier, in his answer, objected that Wm. A. Sanders, his co-executor, had not been made a party. On March 2d, 1872, Judge Melton "Ordered, that the plaintiffs have leave to amend their summons and complaint in this action by adding the name of William A. Sanders, one of the executors of Marshall Frazier, deceased, as a defendant in this action." Another order to same effect was passed by Judge Carpenter, October 25th, 1873, which reads as follows:

1. That the above case be withdrawn from the jury, and that the same be continued.

2. That the plaintiffs have leave to amend their complaint within thirty days by making as a party defendant, William A. Sanders, as co-executor of Wm. H. Frazier, of the last will and testament of Marshall Frazier, with apt words to charge him.

Summons under this order was dated November 19th, 1873; entered in the sheriff's office at Edgefield, January 7th, 1874; served, together with amended complaint, on Sanders, January 14th; entered in the sheriff's office at Greenville, March 24th, and served together with amended complaint on W. H. Frazier, March 27th. Amended complaint was filed in the clerk's office in Columbia, November 22d, 1873.

The defendants denied any liability for the money claimed; denied that the payment was made at request of M. Frazier; denied overdraft on cotton; plead statute of limitations; that the amended complaint and summons had not been served, or attempted to be served, within thirty days, as required by the order; and that the costs in the action brought against their testator in Edgefield had not been paid.

At May Term, 1875, of the court for Richland, it was objected to the jurisdiction of the court that the action was properly triable only in Edgefield county, and the court was requested so to order. Judge Carpenter refused, and the defendants excepted. At the trial of the cause in May, 1876, the same objection and

request was made, and Judge Cooke overruled the objection and refused the request, and the defendants excepted.

At the trial objection was made by defendants to testimony by E. W. Marshall, of Marshall, Beach & Co., and by J. M. Blakely, one of the plaintiffs, as to conversations relating to the matters at issue had by such witnesses with Marshall Frazier, during his lifetime; they were admitted and defendants excepted.

The complaint alleged that plaintiffs were partners when payment of the reclamation was made in December, 1866; a witness testified that the firm was dissolved in December, 1866.

According to one of the witnesses, "Reclamation is, where there is a deficiency, as in this case, the claim made for a payment of such deficiency."

No proof was offered of the correctness of the accounts rendered by Beach, Root & Co., of the sales of the cotton : but such account sales, received by Marshall, Beach & Co. from Beach, Root & Co., were put in evidence.

At the trial the defendants made the following requests for rulings and charges :

The defendants requested the court to rule that this action could not be maintained, because the costs of the former suit of the same plaintiffs against Marshall Frazier had not been paid when this action was commenced against William H. Frazier, executor, and were not paid until long after the said William H. Frazier, executor, had answered plaintiffs' complaint, setting up this, among other grounds of defence. The court refused to rule as requested; whereupon defendants excepted.

The defendants requested the court to rule that the plaintiffs could not proceed with this action against William A. Sanders, executor, on two grounds :

1. That the order of the court, October 25th, 1873, not having authorized plaintiffs to amend the summons by adding William Sanders as a party defendant, their doing so was unauthorized, and set up as a ground of defence by Sanders in his answer.

2. That the order of the court, October 25th, 1875, granting leave to plaintiffs to amend their complaint within thirty days, by making as a party defendant William A. Sanders, as co-execu-

tor of William H. Frazier, of the last will and testament of Marshall Frazier, with apt words to charge him, had not been complied with, as appeared on the record. The court refused so to rule, and the defendants excepted.

The defendants requested his Honor to charge the jury that the liability incurred by M. Frazier to plaintiffs, if any such liability was incurred, arose upon the sale of the cotton in Europe, or, at latest, when the proceeds of sale fell due; and the statutes of limitation ran therefrom in his favor. His Honor refused this request, and the defendants excepted.

The defendants requested his Honor to charge the jury that the statutes of limitation ran in favor of the defendants until process was lodged with the proper officer for service upon them both. His Honor refused this request, and the defendants excepted.

The defendants requested his Honor to charge the jury that the defendants could not answer as executors of M. Frazier until process was served upon them both, and that there was no action properly instituted until process was lodged with the proper officer for service upon both of them. His Honor refused this request, and defendants excepted.

The defendants requested his Honor to charge the jury that the statutes of limitation ran in favor of the defendant, Sanders, until the lodgment of process with the proper officer for service upon him. His Honor refused this request, and the defendants excepted.

The defendants requested his Honor to charge the jury that whatever benefit accrued to the defendant, Sanders, from the statutes of limitation, enured also to the defendant, W. H. Frazier.

The defendants requested his Honor to charge that when new parties, who ought to have been parties originally, are brought before the court by amendment, such new parties may avail themselves of any valid defence which they may have under the statutes of limitation at the time they are made parties to the suit. His Honor refused this request, and ruled that the proposition was inapplicable; and defendants excepted.

His Honor, after refusing all the requests of the defendants to

charge as aforesaid on the statutes of limitation, charged the jury that the statutory period had not elapsed when process was lodged for service on W. H. Frazier, and that the bar of the statute did not exist in favor of either of the defendants. Whereupon defendants excepted.

The defendants requested his Honor to charge the jury that the account-sales introduced in evidence, alone or taken together with the other testimony, are not sufficient proof that the cotton of M. Frazier was actually sold, nor of the prices at which it was sold, nor of the expenditures therein charged against M. Frazier ; these transactions having occurred in Liverpool, England. His Honor refused so to charge, and the defendants excepted.

The defendants requested his Honor to charge that the check of Salomon, Root & Co., introduced in evidence, alone or taken with the other testimony, is not sufficient proof that the money herein referred to ($20,000) was advanced to M. Frazier. His Honor refused so to charge, and the defendants excepted.

The defendants requested his Honor to charge that even if the account sales are sufficient evidence of the transactions therein referred to, M. Frazier was entitled to the proceeds of sales in English money reduced to United States currency, at the current rates of exchange and gold at the time the cotton was sold, or at the time the proceeds fell due, as stated in said accounts of sales. His Honor charged the jury that while this was true, if considered independent of the award and of Frazier's acquiescence in the account of sales rendered, yet, that if M. Frazier signed the award, and afterwards stood by and permitted plaintiffs to pay the reclamation claimed on the cotton, he was estopped from further objecting to the accounts and returns of the sale of his cotton, and was liable for the money paid as reclamation by Blakely & Copeland. Whereupon the defendants excepted.

The defendants requested his Honor to rule and charge the jury that the drafts of Salomon, Root & Co., on Beach, Root & Co., April 18th and 19th, 1866, were their own drafts, and not the drafts of M. Frazier, and that M. Frazier was not liable for the same, and that it was a breach of duty to apply Frazier's money to the payment of said drafts. His Honor charged the

jury that while this was true, if considered independent of the award, and of the fact that Salomon, Root & Co. had advanced to Marshall Frazier $20,000, to be repaid out of the proceeds of the sale of his cotton, yet, if M. Frazier, after having received the $20,000, signed the award and afterwards stood by and permitted plaintiffs to pay the reclamation claimed on the cotton, he was estopped from further objecting to the accounts and returns of the sale of his cotton, and was liable for the money paid as reclamation by plaintiffs. Whereupon the defendants excepted.

The defendants requested his Honor to rule and charge that plaintiffs' action should have been brought upon the entire account of their transactions and those of the other factors, Marshall, Beach & Co., Salomon, Root & Co., and Beach, Root & Co., stated in United States currency, in an account between Blakely & Copeland and M. Frazier, and that the balance should not have been in account between Beach, Root & Co. and M. Frazier. His Honor refused so to rule or charge, and the defendants excepted.

Defendants requested his Honor to charge that it was the duty of Blakely & Copeland to render full and complete returns of all the transactions in regard to this cotton; and that if the jury believe they did not do this, they are not entitled to recover. His Honor refused so to charge, and the defendants excepted.

The defendants requested his Honor to rule and charge that the partnership of Blakely & Copeland having been dissolved before the alleged payment of the money by Blakely & Copeland to Marshall, Beach & Co., the plaintiffs could not recover under the allegations of the complaint. His Honor refused so to charge, and the defendants excepted.

Verdict for the plaintiff for $8455.77, and defendants appealed.

The "points submitted by appellants," and referred to in the opinion of this court, are found in the argument of *Mr. A. J. Norris*, and are as follows:

*First Point.* The court, in Richland, had no jurisdiction to try this action, because neither of the defendants resided in that county. *Code*, § 148, *and amendment; 15 Stat.* 913.

I

This amendment is a remedial statute, and should be construed liberally. *Potter's Dwarris on Stat.* 73; 16 *Abb. Pr.* 31; 18 *Abb. Pr.* 31; 25 *How. Pr.* 416—a case directly in point. See, also, 2 *Paige* 284. The whole code refers to matters of practice only, and the amendment should be applied to cases pending at the time of its passage. The general doctrine (*Potter's Dwarris on Stat.* 162) that statutes are not to have a retroactive operation, does not apply to remedial statutes. *Ibid., and p.* 164, note; *Bishop on Stat. Crimes,* §§ 84, 85. There is no interference with a contract by such changes; if so, defendants would have rights under the law as it was in 1866.

*Second Point.* Plaintiffs failed to amend their pleadings in accordance with order of October 25th, 1873, by being. too late; and said order gave no authority to amend the summons. 2 *Wait Pr.* 508, 569; 4 *Wait Pr.* 688; 14 *How. Pr.* 337; 3 *Sandf.* 736; 32 *How. Pr.* 310. Filing amended complaint was not sufficient. 4 *Wait Pr.* 690; *Code,* §§ 122, 150, 154, 431.

*Third Point.* The action of plaintiffs is barred by the statute of limitations. *Code,* § 122. If both executors had been originally sued, the lodging of the summons with the sheriff, or the service of one, would have bound both. But not so. when one only is sued. The limitations in the code do not apply to this demand. § 96. Under the old law, a suit against one only of two or more qualified executors was void. 2 *Bay* 194.

*Fourth Point.* The shipment and sale of the cotton, what it sold for, what charges were paid on it, &c., must be proven by persons. having personal knowledge; accounts and statements of sales, &c., are not sufficient. See proper practice in *Kuttman* v. *Brown & Goldsmith,* 4 *Rich.* 485.

*Fifth Point.* Check of Salomon, Root & Co. should not have been admitted in evidence, because not proved by drawers or payers.

*Sixth Point.* M. Frazier was entitled to the proceeds of the sales of his cotton in English money, reduced to United States currency at the current rates of exchange and gold, at the time the cotton was sold, or at the time the proceeds fell due, as stated in said accounts of sales. 3 *Kent Com.* 115, 116, 117, note; 11 *East* 269; *Chitty on Bills* *686; 1 *McM.* 320; 2 *B. & Ad.* 78;

3 *Sumn.* 523; 1 *McLean* 423; 4 *Johns.* 124; 20 *Johns.* 102; 16 *Ves.* 461; 2 *Wash. C. C.* 167.

*Seventh Point.* The alleged drafts are not Frazier's drafts, and he is not responsible for them. There is no proper proof that they were drawn or paid. But suppose they were; his draft on them in New York could not be changed in its character by drafts of those three firms *inter sese.*

*Eighth Point.* The plaintiffs should have brought their action on the entire account made out in United States currency, and covering all their transactions with the cotton. They could not select one item of the account and sue upon that. 11 *Rich.* 466.

*Ninth Point.* Plaintiffs did render an account after action brought, showing that Frazier only owed them $4881.40. So judgment was excessive.

*Tenth Point.* E. W. Marshall is assignor of the claim for reclamation, and his testimony was incompetent. *Code,* § 415.

*Eleventh Point.* Same objection applies to the testimony of J. W. Blakely, a party to the cause.

*Twelfth Point.* Plaintiffs were not entitled to recover under the allegations of the complaint, as their partnership had been dissolved before they made their payment to Marshall, Beach & Co.

November 21st, 1878. The opinion of the court was delivered by

WILLARD, C. J. This action is brought by the plaintiffs as factors of Marshall Frazier, deceased, against his executors for money alleged to have been paid by plaintiffs for the account and benefit of said Frazier. The transactions out of which the present demand arises was a consignment of cotton for sale by plaintiffs, as factors of and on account of the defendants' testator, to Marshall, Beach & Co., of Charleston, who consigned to Beach, Root & Co., of Liverpool, by whom the cotton was sold and account of sales rendered. In the account-sales after crediting the proceeds of the sales of the cotton, and debiting commissions, charges, advances, and interest, a balance appeared to the credit of Beach, Root & Co. This balance appears to have been paid by Marshall, Beach & Co., and by them collected from the plaintiffs who now seek to recover the same, less an admitted offset,

from the executors of Frazier. A verdict was rendered for plaintiffs, and the present appeal is based on exceptions to the rulings and charge of the Circuit judge. So far as these exceptions are brought to notice by the points submitted by the appellants, they will be considered, and in the order stated by the appellants.

The first point is that the court in Richland county had no jurisdiction to try this action, because neither of the defendants resided in that county.

It appears that prior to the term at which the cause was tried, and at May Term, 1875, an application was made to the Circuit Court to transfer the cause for trial to Edgefield county, where the defendants both resided, which was refused, and that the defendants at that time excepted to such ruling. It does not appear whether such application was made on notice to the parties, or upon the call of the docket. Properly, it should be made before the cause is reached on the docket, so that the parties may have due notice of the place of trial in order to enable them to make their preparations for the trial. As no irregularity is alleged as the ground of the refusal of the Circuit Court to change the place of trial, we must assume that the application was made in due form, at all events that the plaintiffs assented to the time and manner in which it was made. As objection to proceeding with the trial in Richland county was made on the same ground at the trial, and an exception taken to its denial, whatever may be the force of the last-named exception, in itself considered, it certainly apprised the plaintiffs that the defendants intended to insist on the claim which they had made at a prior time, and therefore they cannot be regarded as having abandoned any right that they might have, as it regarded an error in the previous ruling. The question then arises, was the refusal of the Circuit Court to order the case to be tried in Edgefield county erroneous, and can advantage be taken of such error on this appeal. It is clearly not a question of jurisdiction, in the proper sense of that term, but of the denial of a substantial right material to the defence. The defendants being residents of the county of Edgefield, that was the proper county for the trial of the cause. 15 *Stat.* 913. The court had the right, however, to change the place of trial " in the cases provided by statute."

Unless this power is duly exercised the right of a defendant under the statute is absolute.

The cases in which the court may change the place of trial are stated in Section 149 of the code, as follows: "1. When the county designated for that purpose in the complaint is not the proper county. 2. When there is reason to believe that an impartial trial cannot be had therein. 3. When the *convenience* of witnesses and the ends of justice would be promoted by the change."

In order to warrant a change on the grounds stated in the second and third subdivisions, it must be shown by the allegations and proofs of the parties that such grounds for the action demanded exist.

The order of the court interfering with the right secured .by the statute, can only be supported when resting on such allegations and proofs.

The reasons that may have existed in the breast of the judge are no sufficient ground of his action in such cases, and seldom in any case. It does not appear that any allegations or proofs were submitted to the Circuit Court that could have justified the exercise of the power of the court to change the place of trial from the county in which, by law, it was entitled to be tried in the absence of special grounds for its removal.

On the other hand it was the clear duty of the court under the first subdivision to order the place of trial designated in the complaint to be changed, when it appeared that that was not the proper place of trial. The directions of the statute, that the court may change the place of trial when not laid in the proper county, is not merely a grant of authority for that purpose, but imposes a duty, in view of the fact that the right to such change was secured by the statute.

It must be assumed that the court had the record of the case before it, and determined that as matter of law the residence of the defendants in Edgefield was immaterial to the question raised by the motion. As imperfect as is the statement of the nature of the decision we feel warranted in assuming thus much. The refusal to change the place of trial was clearly wrong, and it

remains to be considered whether that wrong can be alleged as an error at law under the present appeal.

The jurisdiction of this court extends to all appeals from intermediate orders and final judgments in actions where such order or judgment involves the merits. 15 *Stat.* 868. An order involving merely the exercise of discretion on the part of the court making it is not appealable, as error of law cannot be alleged as against such an order. 1 *Wait Prac.* 465. When, however, the order affects a substantial right, necessarily affecting the judgment, it must be regarded as involving the merits. The term "merits" is not very clearly defined. It certainly embraces more than the questions of law and fact, constituting the cause of action or defence. As it regards the principles of construction, the necessary means of attaining an end stand upon the same ground of privilege as the end itself. If, then, a party is entitled to an appeal as a means of securing a proper judgment, he is presumably entitled to such appeal, in order to secure that without which the judgment could not be rightfully had. The word "merits" naturally bears the sense of including all that the party may claim of right in reference to his case. Nor is any authority brought to notice that limits the sense to any particular class of rights among those that have a tendency to control the results of cases. The expression "affecting the judgment," employed by the statute (15 *Stat.* 868) must be regarded as equivalent, in the sense of that statute, to the other expression, "involving the merits," as defining the cases to which that jurisdiction shall extend. They must be regarded as different definitions of the same case. In Section 11 of the code, as it originally stood, the expression was, "involving the merits and necessarily affecting the judgment." As that section now stands, the review of judgments, and intermediate orders upon direct appeal from such judgments or orders, extends to all cases "involving the merits," the other words being omitted, while as it regards intermediate orders, brought up for review by an appeal from the final judgment, the expression employed to limit the jurisdiction is "necessarily affecting the judgment," omitting the words "involving the merits." It is evident that the words "involving the merits," is used in its large significance in the original text

of the code, as appears from the character of the terms limiting it to cases where the judgment was necessarily affected. On the other hand, in the amendment of 1873, this limitation is dispensed with, presumably as unnecessary, and the terms there employed are treated as equivalents. Whatever can be regarded as affecting the necessary means of obtaining a judgment, must be regarded as affecting the judgment itself.

It may be concluded from the foregoing that whenever a substantial right of the party to an action material to obtaining a judgment in such action is denied, a right of appeal lies to this court. Prior to the recent amendment of the code relating to the place of trial, the defendant could not, as matter of right, claim that a trial should be had in the county of his residence. In those cases where the venue was not fixed by the nature of the cause of action itself, it was the right of the plaintiff to select the place of trial, subject only to the limitation that such place of trial must, when any of the parties reside within the state, be in some county where one or more of such parties, either plaintiff or defendant, resides. If the defendant desired to effect a change, it could only be obtained by the order of the court on the grounds specified by law. It is evident that under the law as it now stands, the defendant may claim of right that the trial should be had in the county where he resides, in cases of the class to which the present belongs. If, then, it is material to his defence that the jury, convened to try his case, should be drawn, summoned and empaneled in the manner prescribed by law, so that the denial of right, in this respect, entitles him to an appeal, it is manifest that to change it from a vicinage other than that designated by law, is an error in a matter involving a substantial right material to his defence, and thereby necessarily affecting the judgment. The conclusion reached renders a new trial necessary.

The second point involves the question whether irregularities in complying with an order of the court allowing amendment to the pleadings, can be taken advantage of upon the trial of the cause. It is the duty of the parties, if they wish to take advantage of an irregularity in the mode of interposing a pleading, to move the court in due time before the cause is called, for such order as the nature of the case may demand. It is too late to

take such an objection after the parties have framed an issue and gone to trial upon it.    If the parties had a right to object to the validity of a pleading on the ground of irregularity merely, it would be equivalent to saying that a pleading irregularly interposed may be disregarded as a nullity.    The contrary of this is true, namely, that such a pleading is good until set aside on the ground of irregularity.    The defendant, in making the objection before us, does not stand on the ground of vindicating a substantial right denied to him, but of taking advantage of mere irregularities in form by the opposite party; clearly no such appeal can be allowed by this court.

The third point relates to the statute of limitations.    The court properly refused to charge that the cause of action in suit arose upon the sale of the cotton in Europe.    The liability of defendants' testator to the plaintiffs could not arise until the actual payment by the plaintiffs of the amount of the reclamation made by the parties who sold the cotton.    If, prior to that payment, the plaintiffs had sued M. Frazier, it is clear that they would have failed in their action.    The question of the effect of the statute of limitations, as it regards the defendant, Frazier, depends upon the fact that at the commencement of the action the defendant, Frazier, was the only executor having authority under the will to act.    The will does not admit of any joint executor during the existence of due qualification on the part of Frazier.    Consequently the action was well brought, as it regards Frazier, and the statute cannot be pleaded by him as running after service upon him.    As it regards Sanders, we do not know by what title he is treated as the executor, inasmuch as by the will he cannot claim to be such; and as we are not informed upon what ground he is claimed or admitted to be such, we cannot, at the present stage of the case, determine his relation to the statute of limitations.

The fourth point involves the question of the necessity of proof of the right of the Liverpool house to demand a reclamation.    It was of course necessary to make proof of the state of the accounts, in order to show that the money advanced by the plaintiffs was paid for the advantage of the defendants.    The plaintiffs had the right to put the parties making claim against

them to proof of the accounts in an action, and by waiving such proof by voluntary payment they could not throw that burden on the defendants, but must be regarded as having assumed that duty. The submission and award cannot properly be regarded as an admission by the testator of the defendants of the propriety of the reclamation. The question submitted was as to on whom the duty of settling the accounts was incumbent in the first instance—whether upon the owner of the cotton or his factor; and the decision imposed that duty on the plaintiffs, as such factors. This was the whole effect of the arbitration. There was therefore error in this respect in the charge and refusal to charge.

The request to charge, to which the fifth point relates, was properly refused, as it involved a charge as to the sufficiency of evidence apart from its legal character and tendency, and therefore as to matters of fact within the exclusive competency of the jury.

The charge to which the sixth point relates was clearly erroneous. It involves the proposition that the award of the arbitrators fixed the amount of the reclamation as due from the testator, and therefore the account could not be examined as it regarded the charges for premium on gold and for exchange. As the award could not have such effect, the charge is erroneous. The court having charged the proposition embraced in the request, independently of the erroneous charge that followed, no further question of error is presented.

The observations made as to the sixth point apply to and are decisive of the seventh point. The proposition embraced in the request to charge was submitted to the jury, but its effect destroyed by an erroneous conclusion as to the effect of the award.

It is not necessary to determine the true form of stating the accounts between the plaintiffs and defendants, or their testator, as that is a matter of detail not necessarily affecting the results of an accounting. The court, having reposed the settlement of the accounts upon the effect of the award, rendered questions as to the form of stating the accounts immaterial, as far as it concerned the matters presumably embraced in the verdict. We do not deem it necessary to lay down the rule that should govern

the statement of the accounts as it regards matters of form on any future trial of this cause.

The proposition embraced in the ninth point was properly refused. The effect of rendering imperfect or conflicting accounts by the plaintiffs was a matter to be determined by the jury, and not by the court.

The tenth point is not well taken. E. W. Marshall was not a party to the suit, nor, as far as appears, directly or even indirectly interested in its results. The fact that the witness was a member of the house in Charleston to whom the cotton was consigned by the plaintiff, and through whom the reclamation was made against the plaintiffs, does not put him in the position of having once owned or been interested in the demand made by the plaintiffs. The cause of action upon which they sue arose only in their hands by the payment of the reclamation. They did not assume or acquire any right that had subsisted in the hands of the Charleston house as against M. Frazier; for the effect of the arbitration, as assented to by all the parties, and which is necessarily regarded as the law of the case, fixed the liability, primarily, on the defendants, of stating and settling the account; and the defendants cannot assume a state of relations at variance with that ascertained by the award. Besides, the effect of payment by the plaintiffs was to destroy the right of reclamation, not to preserve it in their own hands, inasmuch as they acted as the agents of the testator. The testimony in question was clearly competent.

The objection to the testimony of the plaintiff, Blakely, made by the eleventh point, was well taken. He was a party to the action, and his testimony related to conversations with a deceased person, and was given in a case where the executor of such diseased person had an opposite interest in such action. The admission was therefore clearly improper.

The twelfth point seeks to take advantage of an immaterial variance between the allegations and proofs, which cannot be done.

It does not appear distinctly what the facts were upon which objection was made to the commissions put in evidence. Nothing appears on the subject but general admissions affecting them.

As upon another trial admissions made on the present record will not be conclusive as to the right to introduce the commissions, it does not appear that the questions in this respect, raised by the present record, can arise on such future trial, and we deem it unnecessary to consider them in the absence of the facts. The present action being against the executors of M. Frazier, we cannot see how the unpaid costs of an action against M. Frazier, brought and discontinued during his lifetime, can be interposed as a defence. Although the cause of action may be the same, there is not an identity of parties. The defendants, as defendants, have no right to demand such costs, but merely as the personal representatives of the deceased former defendant. Under the view taken of the case, we do not regard it as at all material to consider the other matters discussed, as they arise out of the view taken of the case by the Circuit Court, which, as we have seen, was erroneous, and as not likely to be of importance as the further consideration of the case.

There should be a new trial.

New trial granted.

McIVER and HASKELL, A. J.'s, concurred.